Edward S. Conway, J.
This is a proceeding under CPLR article 78 and article 7-A of the State Finance Law whereby petitioners seek an order directing that the actions of respondents establishing and expending public moneys for correctional facilities at Camp Adirondack, Wilton, Hudson, Otis-ville and Warwick be annulled and voided.
*675 The parties have consented to limit this proceeding to the facilities at Hudson, Otisville and Warwick and this court’s decision will be limited to a determination concerning those three facilities.
Petitioner New York Moratorium on Prison Construction (hereinafter referred to as moratorium) is an unincorporated association whose membership consists largely of persons with religious orientations and affiliations who are concerned with the criminal justice and correction system. The moratorium is against further expansion of prison capacity by acquisition, conversion or construction of new beds or facilities. The moratorium urges that no new penal institutions be constructed until alternatives to incarceration have been fully funded and utilized. The individual petitioners are residents of the State of New York and, for the most part, are local residents of Orange County where the proposed prisons at Otisville and Warwick are located.
Respondents are State agencies and officials charged with the public responsibility for renovating and constructing various proposed new correctional facilities in the State.
Petitioners bring this action in order to declare the opening of correctional facilities at Hudson, Otisville and Warwick by the Department of Correctional Services (hereinafter referred to as DOCS) to be null and void and to enjoin them from operating. Petitioners contend: (1) DOCS failed to prepare environmental impact statements (EIS) as to each facility in violation of the State Environmental Quality Review Act; (2) the approval of the said facilities by the Commission of Correction was illegal and arbitrary because the commission did not have "plans and specifications” as required by the Correction Law; (3) DOCS, Facilities Development Corporation (FDC) and the Office of General Services (OGS) failed to submit the contract work on the correctional facilities for public bidding as required by the State Finance Law and Public Buildings Law and there is no "emergency” that excuses compliance with any of the said statutes.
The New York State Legislature, pursuant to chapter 612 of the Laws of 1974, effective September 1, 1976 (as amd by L 1976, ch 228, § 4), enacted the Environmental Quality Review Act (Environmental Conservation Law, art 8). Subdivision 2 of section 8-0109 of the Environmental Conservation Law requires that an EIS must be prepared for any action that an *676 agency proposes or approves which may have a signiñcant effect on the environment (emphasis added).
The Hudson facility proposed by DOCS for use as a correctional facility is the former Hudson Training School for Girls. When this facility was under the jurisdiction of the State Division for Youth (division) it had a resident population of 265, The projected inmate population is 210, 20% less than when the facility was operated by the division. The facility uses city sewers and city water and will not require any additional such facilities. No new buildings will be constructed nor will the use of the facility by DOCS affect any streams or wetlands. The number of employees will be approximately the same as when the facility was operated by the division and no increase in population can be anticipated.
At Otisville, DOCS proposed to use the former Drug Abuse Rehabilitation Center to house 320 inmates which is 20% less than the 400 residents who were there when this facility was operated by the Office of Drug Abuse Services (ODAS). No additional demands for water or sewage treatment are required to be constructed since the existing facilities have adequate capacity. The project will not affect any water or wetlands nor will there be an effect on air quality or increase in traffic above what occurred when the facility was operated by ODAS.
The Warwick facility proposes to house 400 inmates which ' is the same capacity as when the facility was operated by the division. The facility will not have any impact on the wetlands. No increase in traffic, no effect on air quality or expanded demands on the existing water and sewage facilities will result. The number of employees will be approximately the same as when the facility was operated by the division and no increase in population can be anticipated.
This court therefore holds that the proposed use of the facilities herein will not have a significant effect on the environment, pursuant to section 8-0109 of the Environmental Conservation Law, and no EIS is required.
Further, the Commission of Correction’s approval of these facilities was in accord with section 45 of the Correction Law. Final approval of the plans and specifications for the Hudson, Otisville and Warwick facilities was given by the Commission of Correction on March 30, 1971.
Also, section 93 (subd 4, par [c]) of the State Finance Law does not require that the certification by DOCS or the Division *677 of the Budget contain a statement of the facts upon which the certification is based. This section of the State Finance Law authorizes a transfer in allocation when the amount appropriated for the construction of a project to which the transfer and allocation is to be made is insufficient and where the project is certified as necessary and urgent. The statute further provides that a project shall be deemed necessary and urgent in any case where so certified to the Director of the Budget. In the instant case, both of the certifications have been made. There is no requirement in the statute that the facts upon which the certifications are based be stated in the certifications. This court will take judicial notice of the fact that the projects here are, in fact, urgent and necessary.
In view of the foregoing, the petition is in all respects denied.